**HOLMES et al. v. CUMMINGS et al.**

**No. 531.**

District Court, S. D. Texas, Houston Division.

May 4, 1933.

Thomas J. Baten and W. D. Gordon, both of Beaumont, Tex., for plaintiffs.

Sewell, Taylor, Morris & Garwood, of Houston, Tex., for defendant Thomas L. Cummings.

S. A. Crawford, of Conroe, Tex., for defendant T. W. Crawford.

KENNERLY, District Judge.

September 24, 1930, Vincent Walters, who at and before his death resided in Montgomery county, Tex., died there intestate, without a child or children, having never been married. He left ten nephews and nieces, one of whom was Mrs. Belle Holmes, plaintiff herein. At his death, Mrs. Holmes inherited an undivided one-tenth interest (ten and a fraction acres) in 104 acres of land in such county, and in certain personal property, consisting of household and kitchen furniture, farming teams, tools, etc., owned by Walters.

August 19, 1931, plaintiff (joined, as required by Texas Law, by her husband, J. W. Holmes), by general warranty deed, sold and conveyed such undivided interest in the land to defendant Thomas L. Cummings.

This is a proceeding in equity by plaintiff (joined by her husband) to set aside such deed, on the alleged grounds of: (a) False and fraudulent representation by defendants as to the value of the land; (b) false and fraudulent representation by defendants as to the financial, and other condition of the estate of Walters, deceased, and that plaintiff would lose her interest therein unless she sold to defendants; (c) gross inadequacy of price paid plaintiff for such land.

1. Plaintiff at no time negotiated personally with Cummings for the sale of the land. The negotiations were by correspondence. While it is otherwise contended, the testimony of plaintiff and her husband, and that of Cummings, makes it clear (and I so find) that the only communication by Cummings to plaintiff and husband is his letter dated August 14, 1931,[1] agreeing to purchase the land, and written in answer to plaintiff's letter of July 28, 1931,[2] to Crawford & Crawford, agreeing to sell the land for $31.45, and requesting that papers be sent for her signature.

In line with these letters, plaintiff and husband executed the deed to Cummings, forwarded it to him through the bank as directed, and received the purchase price, $31.45. Cummings, in addition, paid $18.55 on the unpaid indebtedness of the estate, being the amount chargeable to plaintiff and husband on such unpaid indebtedness after applying thereon the proceeds of the sale of the personal property of the estate.

The wording of his letter acquits Cummings of any false or fraudulent representations to plaintiff.

2. But plaintiff says false and fraudulent representations were made by defendant Crawford, and that under the evidence here Cummings was a party thereto, and is bound thereby. I think the evidence sufficient to show both Crawford and Cummings desired, and were working together, to purchase the land, or interests therein, and that their relations were such that Cummings is bound by

[1] This letter is as follows:
"Mr. T. W. Crawford of Conroe has sent me your letter in which you wish to sell your interest in the land in the Wilson Strickland Survey in Montgomery County, Texas.

"I am enclosing herewith a deed, which kindly sign, together with your husband J. H. Holmes, before a Notary Public. Be sure and sign before a notary public and sign where designated.

After you have both sign this deed kindly go to a bank in Norman and attach this deed to a draft for the sum of $31.45 and have your bank send to the Second Natl Bank, Houston, Texas, and if the deed is properly executed by you and Mr. Holmes I will pay the draft. You can get a notary to acknowledge your signature at most any bank in Norman and the bank will gladly give you instructions as to how to handle this matter. Just show the bank this letter."

[2] This letter is as follows:
"Ples send the $31.45 & papers to be signed to the Vinson Walters land."

any representations made by Crawford to plaintiff.

Plaintiff at no time negotiated personally with Crawford for the sale of the land. The negotiations were by correspondence. The evidence supports the finding (and I find) that defendant Crawford wrote plaintiff two letters, dated February 24, 1931, and April 25, 1931, respectively. Neither of these were produced upon the trial, but it is shown that the date and wording thereof are the same as two letters,[3] offered in evidence from Crawford to Mrs. Ida Burks, a sister of plaintiff.

It will be observed that the only representations made by Crawford to plaintiff and husband in these letters were as to the condition, and the administration, of the estate of Vincent Walters, deceased. The evidence makes it certain that all of such representations were true; i. e., that Crawford had purchased the interest of several of the heirs, that the personal property of the estate had been sold and applied on the indebtedness, leaving a balance of $185.46. It is also clear that the administrator of the estate was insisting, as in effect stated in Crawford's letter, that, unless the balance of the indebtedness be paid, he would proceed to sell the land in order to raise funds to pay same. There is no evidence to support the view that either Crawford or Cummings were undertaking to bring about the sale of the land by the administrator to deprive plaintiff of her interest therein. The decided weight of the evidence is to the contrary. It is shown by the husband of plaintiff that, when he learned of the death of Walters, he gave instructions that the property of the estate be sold under administration, and the debts paid.

Since no mention of the purchase price of $31.45 is made in either of Crawford's letters, it is evident that Crawford wrote plaintiff another letter (to which plaintiff's letter of July 28, 1931, was a reply), offering to pay $31.45 for the land. This letter is not produced. The evidence supports the finding

---

[3] These letters are as follows:

(February 24, 1931): "Your uncle, Mr. Vincent Walters, at the time of his death, left 104 acres of land in the Wilson Strickland Survey in Montgomery County, Texas, and Mr. B. E. Jones, of Conroe, was appointed administrator of the Estate of Vincent Walters, deceased, and the following claims have been filed in the County Court:

| | |
|---|---|
| First Nat'l Bank of Conroe, | $51.75 |
| J. Wahrenberger & Son, | 71.20 |
| Mary Swain Sanitarium, | 29.00 |
| Dr. T. S. Falvey, | 75.00 |
| Attorneys' Fees, | 25.00 |
| Administrator, | 25.00 |
| Court costs, | 18.81 |
| Taxes—State and County, | 14.45 |
| Taxes—School, | 7.00 |
| | $317.21 |

"Mr. Walters, at the time of his death, had the following personal property:

| | |
|---|---|
| Two (2) horses, | $70.00 |
| Corn, | 10.00 |
| Cotton, | 24.00 |
| Chickens, | 7.00 |
| Cash on hand, | 20.75 |

which has all been sold by the administrator, Mr. B. E. Jones, and the proceeds of the same has been applied on the debts of Mr. Walters. This leaves a balance of $185.46 of indebtedness still due against the estate of Vincent Walters. There being ten (10) nieces and nephews of Vincent Walters, deceased, each one will share equally and be liable for $18.55 on the indebtedness against the estate and each will receive 10.4 acres of land when the land is partitioned among the heirs.

"The writer has bought out the interest of Mrs. Elberry Creel, Frank Walters, Edgar Walters and Jim Walters.

"Kindly let me have your check for $18.55 by return mail or the court is going to sell all of the heirs' interest in order to pay the proportionate part of their indebtedness.

"If you know the address of Mr. F. C. Walters, I would appreciate it very much as the best information I have is that he is somewhere out in McCulloch County.

"Kindly let me hear from you at once, and greatly oblige."

(April 25, 1931): "You seem to have the wrong impression about Mr. Vince Walter's land, if the land is put up and sold for Court Costs and for his debts due at the time of his death. I doubt if the sale of the land will bring enough to pay all the costs due by the estate.

"I have bought out practically all of the heirs on the basis of $15 each for their interest in the estate and will pay you the same if you care to sell.

"Your brother, F. C. Walters, is in the Penitentiary at the present time, his address is Route No. 1, Box No. 1, Huntsville, Texas. I am going to try and get him pardoned, for if he stays in the Penitentiary six months longer he will be dead, for he only weighs 81 pounds now and looks as though he has Tuberculosis.

"Kindly let me hear from you at once, in regards to this land, for the same will be sold for costs in about two weeks."

(and I find) that Crawford made no false or fraudulent representations to plaintiff to induce her to sell the land.

3. This brings us to the remaining question of alleged inadequacy of price, and the legal effect thereof.

At the date of plaintiff's deed to Cummings, the whole tract of land, considered as farm land, was of the approximate value of from $5 to $10 per acre. Plaintiff's interest, being undivided, would have a value less than a divided interest.

The land now has, and has had since December, 1931, a rather large oil value. This is due to the bringing in of a large oil well nearby in December, 1931 (about four months after the date of the deed), and to subsequent oil development nearby. Plaintiff claims the land had such oil value at the date of the deed. I do not so find. It did have some speculative oil value at the date of the deed, due to some leasing activity and to the drilling of some "wild-cat" wells for oil in that general vicinity. While the price paid plaintiff for the land was very small, it was not inadequate, considering the speculative nature of such oil values at the date of the deed.

Where, however, it is charged, as here, that the purchase price is grossly inadequate, the court will carefully scrutinize the conduct of, and transaction between, the parties, in search of fraudulent or inequitable acts. I have done so, and find none.

I have already discussed the representations made to plaintiff by Cummings and Crawford in their letters to plaintiff. Plaintiff insists that the speculative oil values of the land at the date of the deed were known to defendants, and unknown to plaintiff. If true, it is also true that such speculative oil values could have been known to plaintiff by the use of the slightest diligence. Although plaintiff lived in Oklahoma, the evidence shows that she was in touch with the administrator of the estate (her brother-in-law), and could readily have been in touch with others in Montgomery county, where she at one time resided. Several months seem to have elapsed between the time when defendants first offered to purchase the land from plaintiff and the time it was purchased, and no reason appears why, during that period, plaintiff could not have become fully informed as to values, if she in fact was not informed. Plaintiff and defendants were strangers, and there were no such relations between them as made it incumbent upon defendants to advise plaintiff as to values.

But, if there should be a finding of inadequacy of purchase price, that would, standing alone and in the absence of fraud, be insufficient to require the setting aside of the deed.

Judgment for defendants.